FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 12, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL P.,[1] | No. 1:19-cv-03214-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 19, 23 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 23. The parties consented to proceed before a magistrate judge. ECF No. 11. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 19, and grants Defendant's motion, ECF No. 23.

### JURISDICTION

4      The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

6      A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17      In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and

is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 31, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of May 30, 2016. Tr. 199-200. The application was denied initially and on reconsideration. Tr. 105-11, 115-21. Plaintiff appeared before an administrative law judge (ALJ) on March 16, 2018. Tr. 35-72. Prior to the administrative hearing, Plaintiff amended his alleged disability onset date to March 2, 2016, Tr. 304, and Plaintiff confirmed this change during the hearing, Tr. 48. On August 21, 2018, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of March 2, 2016, through his date last insured of March 31, 2016. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe

1 impairments: disorders of muscle, ligament, and fascia, including left shoulder

2 rotator cuff tear and right knee arthritis.  Tr. 18.

3      At step three, the ALJ found that Plaintiff did not have an impairment or

4 combination of impairments that met or medically equaled the severity of a listed

5 impairment.  Tr. 21.  The ALJ then concluded that Plaintiff had the RFC to

6 perform light work with the following limitations:

> [Plaintiff] was able to frequently push and/or pull with the upper
> extremities, frequently balance, and occasionally stoop, kneel, crouch,
> crawl, and climb ramps, stairs, ladders, ropes, or scaffolds.  He could
> occasionally reach overhead bilaterally and needed to avoid
> concentrated exposure to hazards such as dangerous machinery and
> heights.  [Plaintiff] would be off task for up to ten percent of the
> workday.

11 Tr. 21.

12      At step four, the ALJ found that Plaintiff was unable to perform any past

13 relevant work through his date last insured.  Tr. 24-25.  At step five, the ALJ found

14 that, considering Plaintiff's age, education, work experience, RFC, and testimony

15 from the vocational expert, there were jobs that existed in significant numbers in

16 the national economy that Plaintiff could perform, such as estimator.  Tr. 25-26.

17 Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in

ORDER - 7

1    the Social Security Act, at any time from March 2, 2016, the alleged onset date,

2    through March 31, 2016, the date last insured.[2]  Tr. 26.

3         On July 22, 2019, the Appeals Council denied review of the ALJ's decision,

4    Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

5    of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

6                                    **ISSUES**

7         Plaintiff seeks judicial review of the Commissioner's final decision denying

8    him disability insurance benefits under Title II of the Social Security Act.  Plaintiff

9    raises the following issues for review:

10        1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

11        2.  Whether the ALJ properly evaluated the medical opinion evidence; and

12        3.  Whether the ALJ conducted a proper step-five analysis.

13   ECF No. 19 at 2.

14

15

16   _____

17   [2] Although the ALJ incorrectly noted that Plaintiff's alleged onset date was May

18   30, 2016 in this part of the decision, Tr. 26, this appears to be a typographical error

19   as the ALJ previously acknowledged that Plaintiff had amended his alleged onset

20   date from May 30, 2016 to March 2, 2016.  *See* Tr. 15-16, 18, 48, 304.

ORDER - 8

1

**DISCUSSION**

2

**A.    Plaintiff's Symptom Claims**

3

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

4 discrediting his symptom claims.  ECF No. 19 at 10-13.  An ALJ engages in a two-

5 step analysis to determine whether to discount a claimant's testimony regarding

6 subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at

7 *2.  "First, the ALJ must determine whether there is objective medical evidence of

8 an underlying impairment which could reasonably be expected to produce the pain

9 or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

10 "The claimant is not required to show that [the claimant's] impairment could

11 reasonably be expected to cause the severity of the symptom [the claimant] has

12 alleged; [the claimant] need only show that it could reasonably have caused some

13 degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

14

Second, "[i]f the claimant meets the first test and there is no evidence of

15 malingering, the ALJ can only reject the claimant's testimony about the severity of

16 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

17 rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

18 omitted).  General findings are insufficient; rather, the ALJ must identify what

19 symptom claims are being discounted and what evidence undermines these claims.

20 *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*,

ORDER - 9

278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

ORDER - 10

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were inconsistent with

the objective medical evidence during the relevant period.  Tr. 22-23.  An ALJ may

not discredit a claimant's symptom testimony and deny benefits solely because the

degree of the symptoms alleged is not supported by the objective medical

evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

*Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical

evidence is a relevant factor, along with the medical source's information about the

claimant's pain or other symptoms, in determining the severity of a claimant's

symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

404.1529(c)(2).

Here, the ALJ discussed Plaintiff's alleged physical symptoms and

conditions that caused him to be unable to work, such as his shoulders that "don't

last" because they "just rip right back out" and his worsening knee impairment.

Tr. 22.  Plaintiff testified he had side effects from his medications that included

constipation and feeling tired, and described numerous problems that he was

experiencing as of the March 2018 hearing, almost two years after his date last

insured.  Tr. 22.  The ALJ noted that Plaintiff alleged he could not lift his arms to

ORDER - 11

hammer, he could not carry any weight, and he described difficulty with lifting, reaching, walking, and using his hands. Tr. 22 (citing (Tr. 228, 233). However, the ALJ found that Plaintiff's symptom complaints were inconsistent with the objective medical evidence in the record during the relevant period between the alleged onset date of March 2, 2016 and the date last insured of March 31, 2016. Tr. 22-23; *see, e.g.,* Tr. 321-26 (January-March 2016: Plaintiff complained of left shoulder pain and sought out additional treatment; he previously had some success with cortisone injections); Tr. 324, 361 (March 2 and March 3, 2016: Plaintiff sought additional treatment indicating he had reinjured his shoulder lifting a heavy beam a few days earlier); Tr. 373, 385 (May 20, 2016: Plaintiff underwent arthroscopic surgery on his left shoulder); Tr. 373-74 (June 1, 2016: at a post-operative visit for his left shoulder, Plaintiff reported that his pain level was a three out of ten); Tr. 375-76 (July 1, 2016: at another post-operative visit for his left shoulder, Plaintiff reported that his pain level was a two out of ten and his provider noted that he was "doing quite well"); Tr. 380 (August 16, 2016: within three months of his left shoulder surgery, Plaintiff's treating orthopedic specialist indicated that Plaintiff was making good progress and he could engage in light work and activity; upon examination he had nearly full active and passive range of motion in his left shoulder, negative empty can test, three over five external rotation, and an intact neurovascular examination; Plaintiff was noted to be doing

ORDER - 12

well with formal physical therapy, and had transitioned out of his abduction

pillow); Tr. 353 (August 18, 2016: physical examination findings of Plaintiff's

upper extremities were normal, including normal range of motion); Tr. 614

(November 30, 2016: Plaintiff's treating orthopedic surgeon indicated that Plaintiff

had good active range of motion in his left shoulder and was doing well; he noted

that Plaintiff could gradually increase active use of his left upper extremity as

tolerated); Tr. 617 (February 21, 2017: treatment notes showed that Plaintiff was

"doing quite well up until a few months ago when he began experiencing

increasing pain in the left shoulder"; Plaintiff reported doing "some light

construction"; provider noted that Plaintiff's examination was consistent with a

possible recurrent rotator cuff tear).  The ALJ concluded that the record showed

Plaintiff experienced improvement after his left shoulder surgery in May 2016, and

Plaintiff then reinjured his left shoulder several months after his shoulder surgery.

Tr. 23, 616-17.  Further, the ALJ observed that on July 21, 2016, Plaintiff reported

injuring his right shoulder when trying to pull himself into his truck.  Tr. 19 (citing

Tr. 377).  On August 6, 2016, an MRI scan of Plaintiff's right rotator cuff indicated

findings consistent with full and partial thickness tears of both the supra and

infraspinatus tendons with secondary muscle atrophy.  Tr. 19 (citing Tr. 358).

However, as noted by the ALJ, Plaintiff's right rotator cuff injury also occurred

after his date last insured.  Tr. 19; *see* Tr. 377 (July 21, 2016: Plaintiff reported that

ORDER - 13

his right shoulder pain began one to two weeks earlier). Moreover, the ALJ noted that although Plaintiff reported some ankle pain in early 2016, he did not seek out significant treatment prior to his date last insured. Tr. 23 (citing Tr. 321-34). The ALJ found that the medical evidence of record indicated that Plaintiff did not report serious problems with his right lower extremity until August 18, 2016, nearly five months after his date last insured, when he described slipping off a dock at a lake, and Plaintiff was only assessed with an ankle strain. Tr. 23 (citing Tr. 351-53).

Plaintiff challenges the ALJ's conclusion by asserting "the fact that the bulk of the medical evidence occurred after [Plaintiff's] date last insured is not a clear and convincing reason for rejecting his symptom testimony because it is clear that his problems began prior to that date." ECF No. 19 at 11. However, evidence from outside the relevant period in a case is of limited relevance. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165; *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date last insured, was a germane reason to not address the opinion). As discussed *supra*, treatment notes from February 21, 2017 show that Plaintiff was "doing quite well up until a few months ago" when Plaintiff had a possible recurrent rotator cuff tear in his left shoulder after doing some light construction, Tr. 617, and on July 21, 2016, he

ORDER - 14

1  reported injuring his right shoulder one to two weeks earlier when trying to pull

2  himself into his truck, Tr. 377.  Tr. 19.  Where the ALJ's interpretation of the

3  record is reasonable as it is here, it should not be second-guessed.  *Rollins*, 261

4  F.3d at 857.  Here, the ALJ reasonably concluded that the objective medical

5  evidence did not support the level of impairment Plaintiff alleged prior to his date

6  last insured of March 30, 2016.  Tr. 27-28.

7      *2. Improvement with Treatment*

8      The ALJ found that Plaintiff's symptom testimony was inconsistent with the

9  level of improvement he showed following his left shoulder surgery.  Tr. 23.  The

10  effectiveness of treatment is a relevant factor in determining the severity of a

11  claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc.*

12  *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

13  with medication are not disabling for purposes of determining eligibility for

14  benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035,

15  1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's

16  complaints of debilitating pain or other severe limitations).

17      Here, the ALJ concluded that the record demonstrated improvement in

18  Plaintiff's left shoulder.  Tr. 23.  On March 2 and March 3, 2016, Plaintiff sought

19  treatment for his left shoulder, indicating he had reinjured his shoulder while lifting

20  a heavy beam a few days earlier.  Tr. 324, 361.  On May 20, 2016, Plaintiff

underwent arthroscopic surgery on his left shoulder.  Tr. 373, 385.  At a post-operative appointment on June 1, 2016, Plaintiff reported that his pain level was a three out of ten.  Tr. 373-74.  At another follow-up appointment on July 1, 2016, Plaintiff reported that his pain level was a two out of ten, his pain was intermittent, his pain medication was effective and he was taking the pain medication less often than prescribed, and his provider noted that he was "doing quite well."  Tr. 375-76.  Within three months of his left shoulder surgery, Plaintiff's treating orthopedic specialist indicated that Plaintiff was making good progress and he could engage in light work and activity; upon examination he had nearly full active and passive range of motion in his left shoulder, negative empty can test, three over five external rotation, and an intact neurovascular examination.  Tr. 380.  Plaintiff had normal upper extremity range of motion on August 18, 2016.  Tr. 353.  On this record, the ALJ reasonably determined that Plaintiff's allegations of extremely limiting symptoms during the relevant time period were not consistent with the evidence of record due to Plaintiff's improvement after left shoulder surgery.  Tr. 23.

Plaintiff challenges the ALJ's conclusion by arguing that he achieved poor results after numerous shoulder surgeries in 2016 and 2017.  ECF No. 19 at 11.  As noted *supra*, evidence from outside the relevant period in a case is of limited relevance.  *Carmickle*, 533 F.3d at 1165; *see also Turner*, 613 F.3d at 1223-24.

ORDER - 16

1    Where the ALJ's interpretation of the record is reasonable as it is here, it should

2    not be second-guessed.  *Rollins*, 261 F.3d at 857.  Here, the ALJ reasonably

3    concluded that the record showed Plaintiff's left shoulder impairment improved

4    after surgery in May 2016 and was inconsistent with the level of impairment

5    Plaintiff alleged.  Tr. 23.  This was a clear and convincing reason to discredit

6    Plaintiff's subjective symptom complaints.

7        *3.  Inconsistent Statements*

8        In discrediting Plaintiff's symptom claims, the ALJ found that the record

9    contained inconsistent statements about when Plaintiff stopped working.  Tr. 23.

10   In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary

11   techniques of credibility evaluation, including prior inconsistent statements.  *See*

12   *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

13       As an initial matter, Plaintiff argues that because he had a long and

14   successful work history, he is entitled to a finding of substantial credibility.  ECF

15   No. 19 at 12 (citing Tr. 201-02).  A claimant's credibility may be enhanced where

16   they have demonstrated a "good work history over an extended time period."  *See*

17   *Archer v. Apfel*, 66 F. App'x 121, 122 (9th Cir. 2003); *see also Rivera v.*

18   *Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record

19   is entitled to substantial credibility when claiming an inability to work because of a

20   disability."); *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016) ("[W]e have said

ORDER - 17

1     that 'a claimant with a good work record is entitled to [a finding of] substantial

2     credibility when claiming an inability to work because of a disability'").  Here,

3     while Plaintiff worked continuously through 2002, he did not report any earnings

4     in 2003, 2004, 2008, 2009, 2010, or 2013.  Tr. 201-04.  Plaintiff has not

5     demonstrated that his credibility is enhanced by a long and successful work

6     history.

7        The ALJ identified inconsistencies with Plaintiff's timeline for stopping

8     work.  Tr. 23.  The ALJ noted that in his original disability insurance benefits

9     application, Plaintiff alleged that he stopped working on May 30, 2016 because of

10    his conditions.  Tr. 23 (citing Tr. 199, 210).  The ALJ highlighted Plaintiff's report

11    that he was the owner of a contracting business until 2016 and he worked

12    alongside his employees performing a variety of work and earning $40.00 per hour

13    doing full-time work.  Tr. 23 (citing Tr. 238-39).  However, the ALJ also observed

14    that Plaintiff's earnings records did not demonstrate this level of income,

15    indicating that Plaintiff had not reported all of his earnings.  Tr. 23 (citing Tr. 201-

16    04).  Although Plaintiff testified that he worked at his own business until March

17    2016, Tr. 44, and his original application listed May 30, 2016 as the date he

18    stopped working because of his conditions, the ALJ acknowledged Plaintiff's

19    testimony that he was no longer able to perform physical work by March 2016, and

20    that his contracting business closed shortly after that because he could not do the

ORDER - 18

work anymore.  Tr. 22.  The ALJ accepted this explanation, as he found that

Plaintiff had not engaged in substantial gainful activity during the period from his

amended alleged onset date of March 2, 2016, through his date last insured of

March 31, 2016.  Tr. 18.  Moreover, while Plaintiff's earnings records show that he

did not earn any income in 2016, Tr. 201-04, the ALJ does not explain how

Plaintiff's apparent failure to report all of his earnings demonstrates an

inconsistency with the date he stopped working.  The ALJ's determination that

there were conflicting statements in the record about when he stopped working is

not supported by substantial evidence.  Therefore, to the extent that this was a basis

for the ALJ to discount Plaintiff's symptom claims, this was not a clear and

convincing reason to do so.

This error is harmless because the ALJ identified other specific, clear, and

convincing reasons to discount Plaintiff's symptom claims.  *See Carmickle*, 533

F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that

an ALJ's error was harmless where the ALJ provided one or more invalid reasons

for disbelieving a claimant's testimony, but also provided valid reasons that were

supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one

impermissible reason for claimant's lack of credibility did not negate the validity

of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

**B.      Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Russell Maier, M.D. and Shane Sigler, PA-C.  ECF No. 19 at 13-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

ORDER - 20

1  (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

2  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

3  may only reject it by providing specific and legitimate reasons that are supported

4  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–

5  31.  The opinion of a nonexamining physician may serve as substantial evidence if

6  it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

7  53 F.3d 1035, 1041 (9th Cir. 1995).

8      "Only physicians and certain other qualified specialists are considered

9  '[a]cceptable medical sources.'"  *Ghanim*, 763 F.3d at 1161 (alteration in original);

10  *see* 20 C.F.R. § 404.1513(a) (2013).[3]  However, an ALJ is required to consider

11  evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812 F.2d 1226,

12  1232 (9th Cir. 1987); 20 C.F.R. § 404.1527(f).  "Other sources" include nurse

13  practitioners, physicians' assistants, therapists, teachers, social workers, spouses,

14

15

16

17  [3] This section was amended in 2017, effective March 27, 2017.  20 C.F.R. §

18  404.1502(a).  The court applies the version in effect at the time Plaintiff filed his

19  claim.  *See* 20 C.F.R. § 404.1502 (noting changes apply only for claims filed on or

20  after March 27, 2017).

ORDER - 21

and other non-medical sources.  20 C.F.R. § 404.1513(d) (2013).[4]  An ALJ may

reject the opinion of a non-acceptable medical source by giving reasons germane to

the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Maier

Plaintiff's primary treating physician, Russell Maier, M.D., completed a

medical report on April 10, 2017.  Tr. 427-29.  Dr. Maier noted that he had been

treating Plaintiff since May 28, 2013.  Tr. 427.  He diagnosed Plaintiff with a right

and left rotator cuff tear, "restore left post-operatively due for repeat surgery," and

right knee replacement.  Tr. 427.  Dr. Maier reported that Plaintiff's ability to stand

after kneeling was diminished, he was unable to lift or carry heavy loads, and he

was unable to use a hammer or other tools of his trade.  Tr. 427.  He noted that

Plaintiff's rotator cuff repair and his knee were reasonably likely to cause pain, and

stated that Plaintiff's prognosis was poor.  Tr. 427-28.  Dr. Maier opined that work

on a regular and continuous basis would cause Plaintiff's condition to deteriorate

and he would miss an average of four or more days of work per month.  Tr. 428.

---

[4] This section was amended in 2017, effective March 27, 2017.  20 C.F.R. §

404.1502.  The court applies the version in effect at the time Plaintiff filed his

claim.  *See* 20 C.F.R. § 404.1502 (noting changes apply only for claims filed on or

after March 27, 2017).

ORDER - 22

He opined that Plaintiff was severely limited, and that his limitations had existed since at least December 2016.  Tr. 428-29.

On January 19, 2018, Dr. Maier completed another medical report.  Tr. 472-74.  In this report, Dr. Maier noted that he had been treating Plaintiff since before 2000.  Tr. 472.  He diagnosed Plaintiff with shoulder pain, a torn rotator cuff, knee replacement, and arthritis in his back and left ankle.  Tr. 472.  Dr. Maier reported that Plaintiff had limited range of motion in both of his shoulders, he was unable to do squats or get up from his knees without difficulty or assistance, and he had pain in several major joints including his knees, shoulders, and ankles.  Tr. 472.  He opined that it was not safe for Plaintiff to do his contractor work while taking opioids.  Tr. 472.  Dr. Maier noted that Plaintiff had mild underlying anxiety that increased his pain, and his prognosis was poor.  Tr. 472-73.  He opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate because his joints were worn out and he could not take further manual labor at his age.  Tr. 473.  He also opined that Plaintiff would miss an average of four or more days of work per month, as he would be "unable to work more than a day."  Tr. 473.  He opined that Plaintiff would be able to perform light work, he was able to lift 20 pounds, although he could not bend to the ground to do so, and he was able to lift and carry 10 pounds.  Tr. 473.  Dr. Maier opined that Plaintiff's limitations had existed since at least October 2016.  Tr. 474.

ORDER - 23

The ALJ gave Dr. Maier's opinion little to no weight. Tr. 24. Because Dr. Maier's opinion was contradicted by the nonexamining opinion of James Irwin, M.D., Tr. 87-98, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Maier's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Maier's opinion was outside the relevant time period. Tr. 24. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165; *see also Turner*, 613 F.3d at 1223-24 (date of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date last insured, was a germane reason to not address the opinion). Plaintiff's date last insured was March 31, 2016. Tr. 15. The ALJ noted that Dr. Maier indicated the limitations specified in his April 2017 report existed as of December 2016, which was about eight months after Plaintiff's date last insured. Tr. 24 (citing Tr. 429). The ALJ also noted that in his later opinion, Dr. Maier suggested that Plaintiff's limitations had existed as of October 2016, which was about six months after Plaintiff's date last insured. Tr. 24 (citing Tr. 474). Plaintiff asserts that because Dr. Maier was assessing limitations that existed prior to Plaintiff's date last insured, the timing of his medical reports "was an inadequate reason to reject his assessments." ECF No. 19 at 15. As discussed *supra*, the ALJ found that Plaintiff's symptom complaints during the relevant period resolved shortly after his date last insured, and his subsequent symptom

ORDER - 24

complaints began after his date last insured.  Tr. 19, 22-23; *see, e.g.,* Tr. 324, 361,

373-76, 380, 385 (Plaintiff injured his left shoulder lifting a heavy beam in early

March 2016; but he had arthroscopic surgery on May 20, 2016, and Plaintiff

reported improvement at his post-operative appointments in early June and early

July 2016; within three months of his left shoulder surgery, Plaintiff's treating

orthopedic specialist indicated that Plaintiff was making good progress and he

could engage in light work and activity; upon examination he had nearly full active

and passive range of motion in his left shoulder, negative empty can test, three

over five external rotation, and an intact neurovascular examination); Tr. 377

(nearly four months after Plaintiff's date last insured, on July 21, 2016, Plaintiff

reported injuring his right shoulder one to two weeks earlier when trying to pull

himself into his truck); Tr. 618 (in March 2017, almost a full year after his date last

insured, Plaintiff reported pain in his right knee); Tr. 351-53 (Plaintiff did not

report serious problems with his right lower extremity until August 18, 2016,

nearly five months after his date last insured, when he described slipping off of a

dock at a lake, and Plaintiff was assessed with an ankle strain at that time).  Based

on this record, the ALJ reasonably determined that Dr. Maier's opinion was

entitled to little or no weight because it focused on Plaintiff's limitations after the

ORDER - 25

1  date last insured.  Tr. 24.  This was a specific and legitimate reason to discredit Dr.

2  Maier's opinion.

3  *2.  PA-C Sigler*

4  The record includes treatment notes from a left shoulder post-operative visit

5  on August 16, 2016 with Plaintiff's treating orthopedic specialist, Shane Sigler,

6  PA-C.  Tr. 380-81.  Mr. Sigler noted that Plaintiff's activity level was "as

7  tolerated," and his work status was reported as light work and activity.  Tr. 380.

8  He reported that Plaintiff was improving, his pain level was five out of ten, and his

9  pain frequency was intermittent.  Tr. 380.  He noted that Plaintiff was having a

10  good response to his pain medication, he was healing well, and making good

11  progress.  Tr. 380.  Upon physical examination, Mr. Sigler found that Plaintiff's

12  inspection of his left shoulder revealed well-healed surgical portals, no erythema or

13  signs of infection, nearly full passive and active range of motion, negative empty

14  can test, three out of five external rotation, and his neurovascular examination was

15  intact.  Tr. 380.  Mr. Sigler noted that Plaintiff had been doing well with formal

16  physical therapy, he had transitioned out of his abduction pillow, and he would

17  continue to avoid any heavy pulling or pushing.  Tr. 381.  The ALJ assigned

18  significant weight to Mr. Sigler's August 2016 opinion indicating that Plaintiff

19

20

ORDER - 26

1  could tolerate light work with the need to avoid any heavy pulling or pushing.[5]  Tr.

2  24.

3      Plaintiff faults the ALJ for assigning significant weight to Mr. Sigler's

4  opinion, arguing that while Mr. Sigler opined that Plaintiff was able to perform

5  light work, the record does not demonstrate that Mr. Sigler meant "light work" as

6  used by the Social Security Administration.  ECF No. 19 at 15.  The legal

7  conclusion of disability is reserved exclusively to the Commissioner.  *See* 20

8  C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source

9  of an opinion on issues reserved to the Commissioner . . . "); *see also McLeod v.*

10  *Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) ("Although a treating physician's

11  opinion is generally afforded the greatest weight in disability cases, it is not

12  _____

13  [5] The ALJ gave no weight to the short term limitations that Mr. Sigler assessed

14  following Plaintiff's left shoulder surgery in May 2016, indicating Plaintiff could

15  not work.  Tr. 24 (citing Tr. 373, 375).  Plaintiff does not challenge this finding,

16  ECF No. 19 at 15, thus, any challenge is waived.  *See Carmickle*, 533 F.3d at 1161

17  n.2 (determining Court may decline to address on the merits issues not argued with

18  specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not

19  consider on appeal issues not "specifically and distinctly argued" in the party's

20  opening brief).

ORDER - 27

binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability.").  Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").  "In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 C.F.R. § 404.1527(d) … For example, it would be appropriate to consider the supportability of the opinion and its consistency with the record as a whole…"  SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).  Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence.  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.

Although not required to provide specific and legitimate reasons to credit a medical opinion, here the ALJ listed two reasons for assigning credit to Mr. Sigler's opinion.  Tr. 24.  First, the ALJ found that Mr. Sigler's status as Plaintiff's treating specialist throughout the process of his left shoulder surgery lent greater credibility to his medical opinion.  Tr. 24.  The number of times a claimant meets

ORDER - 28

with a provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. §

404.1527(c)(2)(i). Additionally, the extent to which a medical source is "familiar

with the other information in [the claimant's] case record" is relevant in assessing

the weight of that source's medical opinion. 20 C.F.R. § 404.1527(c)(6). Second,

the ALJ found that Mr. Sigler's opinion was consistent with Mr. Sigler's own

treatment records, including his physical examination findings. Tr. 24; *see* Tr. 380

(physical examination revealed Plaintiff had nearly full passive and active range of

motion, negative empty can test, three over five external rotation, and his

neurovascular examination was intact). Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Plaintiff

does not challenge the ALJ's findings that Mr. Sigler treated Plaintiff throughout

the process of his left shoulder surgery, or that his opinion was consistent with his

physical examination findings. ECF No. 19 at 15. The Court concludes that the

ALJ's evaluation of Mr. Sigler's opinion was based on legally sufficient reasons.

**C.    Step Five**

Plaintiff argues that the ALJ failed to meet his burden at step five. ECF No.

19 at 15-18. "[I]f a claimant establishes an inability to continue [his] past work,

1  the burden shifts to the Commissioner in step five to show that the claimant can

2  perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679

3  (9th Cir. 2005) (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At

4  step five, "the ALJ ... examines whether the claimant has the [RFC] ... to perform

5  any other substantial gainful activity in the national economy." *Id*.  "If the

6  claimant is able to do other work, then the Commissioner must establish that there

7  are a significant number of jobs in the national economy that claimant can do."

8  *Tackett*, 180 F.3d at 1099.  "There are two ways for the Commissioner to meet the

9  burden of showing that there is other work in 'significant numbers' in the national

10  economy that claimant can perform: (1) by the testimony of a [VE], or (2) by

11  reference to the Medical-Vocational Guidelines…" *Id*.  "If the Commissioner

12  meets this burden, the claimant is 'not disabled' and therefore not entitled to ...

13  benefits." *Id*. (citation and emphasis omitted).  "If the Commissioner cannot meet

14  this burden, then the claimant is 'disabled' and therefore entitled to ... benefits."

15  *Id*. (citation and emphasis omitted).

16      First, Plaintiff argues that the ALJ's identified job of estimator is

17  inconsistent with the assessed RFC.  ECF No. 19 at 16-17.  To ensure consistency,

18  an ALJ must inquire about "an apparent unresolved conflict between [the

19  vocational expert's] evidence and the DOT."  SSR 00-4p, 2000 WL 1898704, at

20  *2.  "For a difference between an expert's testimony and the [DOT's] listings to be

ORDER - 30

1  fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v.*

2  *Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).  Thus, failure to resolve a conflict is

3  only prejudicial if there is an actual conflict or if the vocational expert's

4  explanation is deficient. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir.

5  2007).  Here, the ALJ found that Plaintiff was able to perform the job of estimator,

6  which requires frequent reaching.  Tr. 25-26.  Plaintiff argues that he is precluded

7  from performing the estimator job because his RFC limits him to only occasional

8  overhead reaching with both arms.  ECF No. 19 at 16-17.  Although the estimator

9  job requires frequent reaching, "not every job that involves reaching requires the

10  ability to reach overhead." *Gutierrez*, 844 F.3d at 808; *Hulsey v. Saul*, 794 Fed.

11  App'x. 659 (9th Cir. Feb. 19, 2020) (unpublished opinion) (citations omitted and

12  emphasis in the original) ("Although the [DOT] notes that both the phlebotomist

13  and gambling cashier occupations generally require frequent reaching, it does *not*

14  indicate that those occupations require frequent *overhead* reaching or overhead

15  reaching with the non-dominant arm … Thus, there is also no apparent conflict

16  with the [VE's] testimony and the [DOT] with respect to [the plaintiff's] non-

17  dominant-hand overhead reaching ability.").  The job description for the estimator

18  position is short and easy to comprehend.  DOT #169.267-038, *available at* 1991

19  WL 647453.  The description specifies that an estimator analyzes blueprints,

20  specifications, proposals, and other documents to prepare time, cost, and labor

1  estimates for products, projects, and services, reviews data and prepares itemized

2  lists, computes cost factors, prepares estimates, or conducts "studies to develop and

3  establish standard hour and related cost data or effect cost reductions," and

4  consults with clients and others. *Id.* The description of the sedentary estimator

5  position does not reflect a job that requires any overhead reaching work, and

6  nothing in the DOT description suggests that more than occasional overhead

7  reaching is "essential, integral, or expected." *Id*; *Gutierrez*, 844 F.3d at 808;

8  *Higgins v. Berryhill*, 2017 WL 4037691, at *9 (W.D. Wash. Sept. 13, 2017) ("[a]s

9  in *Gutierrez*, none of the duties of this job appear to require overhead reaching

10  thereby making the conflict between the VE's testimony and the DOT so apparent

11  or obvious that the ALJ was required to ask additional questions."). Further, at the

12  administrative hearing, the ALJ requested that the vocational expert let him know

13  if her testimony was not consistent with the DOT in case the ALJ had a question.

14  Tr. 39. The ALJ also asked the vocational expert what her testimony was usually

15  based on if she did deviate from the DOT. Tr. 39. The vocational expert testified

16  that any testimony that deviated from the DOT was based on her "professional

17  experience as a vocational rehabilitation counselor for the past 25 years." Tr. 39.

18  Based on this record, the ALJ was entitled to rely on the vocational expert's

19  testimony that Plaintiff was capable of performing the job of estimator.

20

1    Next, Plaintiff contends that the ALJ incorrectly found Plaintiff's past

2    relevant work as a contractor resulted in transferrable skills to the estimator

3    position. ECF No. 19 at 17-18. A claimant has transferable skills "when the

4    skilled or semiskilled work activities [the claimant] did in past work can be used to

5    meet the requirements of skilled or semi-skilled work activities of other jobs."

6    *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986) (quoting 20 C.F.R. §

7    404.1568(d)(1)). "A finding of transferability is most probable among jobs that

8    involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a

9    similarity of services or products." *Id.* (citing 20 C.F.R. § 404.1568(d)(2)).

10   However, "[c]omplete similarity of skills ... is not necessary." *Id.* (citing 20 C.F.R.

11   § 404.1568(d)(3)). At the time of the ALJ's decision, Plaintiff was over 55 years

12   old, rendering him "of advanced age" under the Social Security regulations. 20

13   C.F.R. § 404.1563(e). The Social Security regulations provide that, when a

14   claimant is of advanced age and has "a severe impairment(s) that limits you to no

15   more than sedentary work, we will find that you have skills that are transferable to

16   skilled or semiskilled sedentary work only if the sedentary work is so similar to

17   your previous work that you would need to make very little, if any, vocational

18   adjustment in terms of tools, work processes, work settings, or the industry." 20

19   C.F.R. § 404.1568(d)(4). The Ninth Circuit has further elaborated that, to satisfy

20

ORDER - 33

the "very little, if any" standard, the skills at issue must be "directly transferable."

*Renner*, 786 F.2d at 1423-24.

Plaintiff first argues that the ALJ erred in finding that he could work as an estimator because Dr. Maier opined that contractor work would be excluded due to Plaintiff's use of prescription opioids. ECF No. 19 at 17 (citing Tr. 472). As discussed *supra*, the ALJ reasonably gave Dr. Maier's opinions little to no weight because his opinions were outside the relevant time period. Tr. 24. Plaintiff also argues that he had been his own employer since 2000 and it is not clear whether working for someone else would be a significant vocational adjustment under 20 C.F.R. § 404.1568(d)(4). ECF No. 19 at 17-18. A vocational expert's testimony is itself substantial evidence sufficient to uphold the ALJ's decision. *Thomas*, 278 F.3d at 960 (finding vocational expert's testimony was substantial evidence on which the ALJ could rely); *Johnson v. Colvin*, 31 F.Supp.3d 1262, 1272-73 (E.D. Wash. 2014) (same); *Ball v. Astrue*, 2010 WL 3420166, *13 (D. Or. 2010) ("The [vocational expert's] testimony provided the ALJ with substantial evidence of the skill level required in plaintiff's past relevant work and the particular skills acquired by his past relevant work activities."). Here, as Plaintiff notes, when asked if it would be a significant vocational adjustment to go from working for oneself for 15 years to then working for someone else, the vocational expert testified that half of individuals are successful at making that transition while the

ORDER - 34

other half struggle with the change.  ECF No. 19 at 17; Tr. 68.  However, as

Defendant asserts, 20 C.F.R. § 404.1568(d)(4) addresses vocational adjustment "in

terms of tools, work processes, work settings, or the industry," and those do not

differ depending on whether a person is performing the job duties as a self-

employed individual or performing those same duties working for someone else.

ECF No. 23 at 17.  Further, as highlighted by Defendant, even if a change from

working for oneself to working for another person would be a vocational

adjustment, the record demonstrates that Plaintiff was good at following written

and spoken instructions, he had never been fired or laid off from a job because of

problems working with others, he got along "great" with authority figures, he did

not have any problems getting along with family, friends, neighbors, or others, and

he was great at handling stress and changes in routine.  ECF No. 23 at 17 (citing

Tr. 233-34).  The ALJ's finding that Plaintiff's ability to transfer his skills to the

job of estimator would have very little, if any, vocational adjustment in terms of

tools, work processes, work settings, or the industry, was supported by substantial

evidence.  Tr. 26.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 35

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

3.  The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 12, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36